## Michael Boring's Appeal.

A payment of interest after the maturity of a debt is not a sufficient consideration to support an agreement to extend the time for payment; and a promise of extension given under such circumstances will not release a surety.

Even an extension for valuable consideration will not release a joint debtor.

(Argued May 25, 1887. Decided October 3, 1887.)

January Term, 1887, No. 106, E. D., before MERCUR, Ch.

NOTE.—It is to be noticed that the payment of interest in this case was not a prepayment, but to liquidate the sum already due. Had it been otherwise, the principle recognized in Grayson's Appeal, 108 Pa. 581, and Sieben-

J., Gordon, Trunkey, Sterrett, and Clark, JJ.    Appeal
from a decree of the Common Pleas of Huntingdon County dis-
charging a rule to show cause why a confessed judgment should
not be opened.    Affirmed.

The facts, as they appeared from the depositions, were stated
in the following opinion, delivered by Furst, P. J., upon dis-
charging the rule :

It appears from the evidence in the case that Michael Boring,
Thomas J. Gates, Jacob Sharp and others were engaged in and
owners of what is termed a "co-operative store" at Mill Creek,
in this county.    Under what firm name it was carried on does
not appear ; but that it was a copartnership of some kind is very
clear from the evidence.    On the 31st of March, A. D. 1883,
Thos. J. Gates and Michael Boring gave to Jacob Sharp their
judgment exemption note, duly signed and sealed by them, pay-
able one day after date, for the sum of $1,031.28.    Judgment
was entered upon this note in February, 1886, and execution
issued thereon.    Jacob Sharp, the payee, died February 14,
1886.

This is an application by Michael Boring, one of the makers
of the note, to open the judgment, upon the allegation that he
was but a surety upon the note, and that he was discharged from
the payment thereof by reason of an extension of time given to
Gates, the alleged principal, by Jacob Sharp on the 28th of
March, 1884, and on the 31st day of March, 1885.    The further
defense, that Boring was to be surety only for thirty days, was
abandoned on the argument of the case.    The evidence failed
to show that John Gates, father of Thomas, ever appeared or
offered to take his place.    Wilson v. Glover, 3 Pa. St. 404.

The first question is, Was Michael Boring a surety in this
note ?    Second, If he was, did the holder of the note release or
discharge him by an extension of time to his principal without
his knowledge and consent ?

First, then, What was the nature of the contract entered into
by Boring ?

eck v. Anchor Sav. Bank, 111 Pa. 187, 2 Atl. 485, would have applied, and
the surety been released.    Van Horne v. Dick, 151 Pa. 341, 24 Atl. 1078;
Bishop's Estate, 195 Pa. 85, 45 Atl. 582; Mowery v. Brumbaugh, 14 Pa. Co.
Ct. 257.    In such cases it is necessary that an agreement to extend appears,
based on a valid consideration.    Dow v. Chambers, 37 Phila. Leg. Int. 399;
Farmers' Nat. Bank v. Marshall, 9 Pa. Super. Ct. 621, 44 W. N. C. 68.

It appears from the testimony of defendant's witness, Dr. McCarthy, that the owners of this store sold it on the 31st day of March, 1883, to Thomas J. Gates and Bruce Boring, a son of Michael Boring, for some $2,000. Dr. McCarthy swears, that "this note was given for Sharp's interest in the store." On cross-examination he swears that "Sharp said that he would take Thomas J. Gates and his father for what the company owed him." "I replied that would be as good as cash." "The firm of Gates & Boring was to pay the Sharp note." Michael Boring was doing business for his son Bruce; he said he would put $500 or $600 in the business for his son and that he would have to get through himself after that.

Thomas J. Gates swears: The purchase was concluded on the 31st of March, 1883. Jacob Sharp agreed to take my note with my father as surety for the amount due him from the company. Sharp's interest in the store was $1,031.28.

According to this testimony, which is undisputed, it is clear that the company owed a debt to Sharp of $1,031.28, and that Michael Boring was one of the parties owing the debt; that this note was given to secure the payment of it; such being the case, Michael Boring was a joint debtor in the note, and not merely a surety; hence no extension given, such as testified in this case, would discharge him. This would be sufficient upon which to rule this case, but we prefer to place our ruling upon the ground that Boring was a surety, and in this light let us determine the second question, whether or not he was discharged.

We must not overlook the fact that Jacob Sharp is dead, and the only evidence in the case upon this question is the testimony of Thomas J. Gates, one of the makers of the note.

Admitting, however, that he is competent as a witness for Boring under the authority of Good v. Calvert, 1 Pennyp. 140, was there any consideration for the extension given either on the 28th of March, 1884, or 31st of March, 1885? Did what occurred on these occasions "tie the hands" of Sharp, so as to prevent him from proceeding to collect the note?

We admit that the prepayment of interest on a note is sufficient consideration to support any agreement to extend the time of payment, and the surety not assenting thereto would be discharged. The law pays no regard in such a case to the adequacy of the consideration. Grayson's Appeal, 16 W. N. C. 388; Siebeneck v. Anchor Sav. Bank, 111 Pa. 187, 2 Atl. 485; Uhler v.

Applegate, 26 Pa. 140; Good v. Calvert, 1 Pennyp. 140; Calvert v. Good, 95 Pa. 65.

If a creditor gives time to the principal debtor, the surety is discharged, if by his act he cannot proceed. Clippinger v. Creps, 2 Watts, 48; Henderson v. Ardery, 36 Pa. 451.

Was there any consideration for the promise to extend the time of payment of the note? Was there any prepayment of interest? We think not.

Thomas J. Gates swears that "on the 28th of March, 1884, Sharp said if I would pay him the interest he would extend the note for one year. I agreed to this proposition and paid him the interest; and he agreed to extend the note one year." Sharp indorsed on the note the payment of the interest in full for one year; but he made no indorsement of any agreement to extend the time of payment. It is certainly indisputable that the note was due, and payable on the 1st of April, 1883, and that it bore interest from that date; hence, when the payment of interest was made, on the 28th of March, 1884, the note with its accumulated interest, was overdue one whole year less two or three days. Mr. Sharp was then entitled to receive, not only the interest, but also the principal. The entire debt had been due for a year. What amount was then paid is not stated, except that it was a year's interest. Did they treat the year as having expired on that day, or did Gates pay the interest on the 31st of March, 1884? If he paid the interest for two days more, this can in no sense be considered a prepayment, upon which to predicate the discharge of a surety, because the whole debt was due and payable; and any excess would be treated as a partial payment on the note. Sharp gained no advantage by this payment or by the payment made a year after; he simply received what was legally due him, and only a fraction of that. How then can it be treated as a consideration for a promise to extend the time of payment? He was at liberty to proceed at once to the collection of his debts. Hartman v. Danner, 74 Pa. 36.

Mere indulgence will not discharge a surety. This principle has been so long and firmly held by the supreme court that it is not necessary to cite the authorities. It is sufficient to refer to Rhoads v. Frederick, 8 Watts, 448; United States v. Simpson, 3 Penr. & W. 437, 24 Am. Dec. 331; and Hartman v. Danner, 74 Pa. 36.

Had the interest been paid in advance for the time to which

the payment had been extended, as is the case of Siebeneck v. Anchor Sav. Bank, there would have been a sufficient consideration for the promise and the surety would have been discharged. But such was not the case. The request of the payee was this: If you pay the interest for the past year, which was already due and overdue for a year, he would wait another year or extend the payment that length of time. There was no request to pay interest in advance, and no interest was demanded in advance or paid for the ensuing year at the time of the extension nor until the year had expired. Such being the case the promise to extend was made without consideration; it was merely gratuitous, and did not prevent the plaintiff from proceeding to collect the debt due him.

We therefore discharge the rue to open the judgment.

The assignment of error specified the action of the court in discharging the rule.

*Petrikin & McNeil,* for appellant.—The payment of one year's interest on March 28, 1884, on the $1,031.28, from April 1, 1883, to April 1, 1884, was a payment of interest on the note four days in advance. Mr. Sharp by his agreement tied his hands, so that he could not have moved one step during the four days to collect the note. This absolutely discharged the appellant who was the surety, who had not assented to the extension.

The prepayment of interest for a single day is a sufficient consideration to support an agreement to extend; and a surety on such note not giving his assent to such an extension will be discharged from liability. Uhler v. Applegate, 26 Pa. 140; Siebeneck v. Anchor Sav. Bank, 111 Pa. 187, 2 Atl. 485; Good v. Calvert, 1 Pennyp. 140; Calvert v. Good, 95 Pa. 65.

The question in such case is whether, by the act or agreement, the surety might have been prejudiced, and not whether he was in fact injured. Clippinger v. Creps, 2 Watts, 46.

After the positive proof, uncontradicted, that Mr. Sharp, in consideration of the payment of the interest, a part of which was in advance, agreed to extend the time for the payment of the note, it was a question for a jury to pass upon. Miller v. Stem, 12 Pa. 389.

*W. P. & R. A. Orbison,* for appellee.—A payment of part of a debt, either principal or interest, before it is legally demanda-

ble, will be a sufficient consideration to support an agreement to give time. But such payment after maturity of the debt has not the same effect, for the plain reason that in a legal sense it is neither a benefit to the creditor who is entitled to the whole nor an injury to the debtor who ought to have done this and more, without any promise from the creditor. Hartman v. Danner, 74 Pa. 40.

PER CURIAM:

The opinion of the court below so properly and completely disposes of the appellant's case as to render further discussion unnecessary.

The appeal is dismissed and the decree affirmed, at the costs of the appellant.